## ELLISON *vs.* DANIELS.

A mortgager of real estate, as against all persons except the mortgagee and those holding his rights under the mortgage, is regarded as the owner of the estate mortgaged, and may maintain a real action to recover the possession thereof.

A stranger to the mortgage title will not be permitted to set up the outstanding mortgage *alone*, in answer to the action of the mortgager.

The interest of a mortgagee is not in fact real estate ; but he is entitled to have it treated as such, so far as it may be necessary, in order to enable him to prevent waste, and to keep the land from being in any way diminished in value, or to receive the rents and profits ; and, in short, to give him the full benefit of his security, and appropriate remedies for any violation of his rights under the mortgage.

To enable the mortgagee to sell and convey the mortgage interest, is not one of the purposes for which his interest may be regarded as real estate.

As the subject of sale or transfer, the interest of the mortgagee is a mere chattel, and is capable of being transferred, only in connection with, and by means of a sale, or assignment of the debt.

The deed *alone* of the mortgagee, unaccompanied by a foreclosure of or entry under the mortgage by him, and purporting to convey the land only, will not pass the debt secured by the mortgage, and consequently will not pass the interest of the mortgagee.

Whether, if it appeared that the mortgagee had possession and control of the debt, at the time of executing the deed of the land, that fact would give effect to the deed to pass the interest of the mortgagee—*quære.*

Ellison *v.* Daniels.

Whether a mortgage deed, accompanied by actual possession under it, would so far clothe the mortgagee with the title to the real estate as to enable him by a deed of the land to convey his mortgage interest—*quære.*

WRIT OF ENTRY, to recover twenty-five acres of land in Barrington, in the county of Strafford.

Plea, *nul disseizin.*

It appeared, that on August 5, 1814, the demandant was seized of the demanded premises in fee, and that on that day he conveyed the same, together with eight acres of other land, to Joseph Ellison, in mortgage, to secure the payment of the demandant's promissory note of even date with the deed of mortgage, and payable to the mortgagee on or before August 1, 1818. Joseph Ellison, on November 30, 1820, executed a deed of the premises to Abraham Ellison, with covenants of warranty, and Abraham Ellison, on March 6, 1826, executed a similar deed of the premises, to the tenant. It appeared, also, that the demandant, on April 1, 1820, gave Joseph Ellison possession of the eight acres of land described in his mortgage deed.

There was also evidence tending to prove, that the demandant retained possession of said twenty-five acres, after giving up possession of said eight acres; and the tenant offered evidence tending to prove that Joseph Ellison took possession of the twenty-five acres, for the purpose of foreclosing the mortgage as to that portion of the mortgaged premises, at the same time he took possession of the eight acres.

The note was not produced at the trial, and there was no evidence of any transfer, or assignment of it by Joseph Ellison.

At the trial, the demandant contended that if Joseph Ellison had not foreclosed the mortgage, prior to the execution of the deed to Abraham Ellison, that nothing passed by said deed, and that the tenant, therefore, acquired no title to the premises by virtue of the deed of Abraham to himself.

But the court ruled that whatever right Joseph Ellison acquired by the mortgage, passed, in virtue of said deeds, to the tenant.

A verdict was returned for the tenant, and the counsel for the demandant moved to set the same aside, and for a new trial, for alleged error in said ruling.

*James Bell*, for the demandant, contended—

1. That the tenant showed no evidence of an assignment of the mortgage debt from Joseph Ellison. 6 *N. H. Rep.* 210, *Bell* vs. *Morse.*

2. That without such assignment, the interest of Joseph Ellison in the mortgage did not pass to the tenant. 19 *Johns.* 326 ; 2 *Cowen's R.* 231 ; 4 *Kent's Com.* 186.

3. That the interest of a mortgagee is but a chattel interest. 5 *Cowen's R.* 202.

4. That the interest of a mortgager is regarded as real estate. 13 *Mass. R.* 311 ; 2 *N. H. Rep.* 401.

*Christie & Bartlett*, for the tenant, argued, that the entry by Joseph Ellison upon the eight acres was a taking possession of all the lands described in the mortgage. 4 *Mass. Rep.* 416 ; 18 *Johns. R.* 40 ; 3 *N. H. Rep.* 27 ; 7 *Ditto* 275 ; and that that possession might be assigned.

That the mortgagee, being in possession of the note, as he must be presumed to be, the contrary not appearing, and conveying with warranty, must be holden to have conveyed the debt ; and that, at all events, under such circumstances, he holds the note in trust, for the benefit of his grantee.

They also further contended, that the demandant, having parted with his title by reason of the mortgage, could not claim the land as against the tenant in possession, except upon the ground that the debt was paid.

WOODS, J.   This action is brought by the demandant to recover possession of a tract of land conveyed by him in mortgage to one Joseph Ellison, while the mortgage still continues outstanding and in full force.

Upon the facts reported, there can be no pretence that

Ellison *v.* Daniels.

the mortgage has been foreclosed as to the lands in question. Under our statute, no possession, short of a peaceable and continued actual possession, for one year after entry, can operate a foreclosure of a mortgage. *N. H. Laws* 486. It does not appear that Joseph Ellison, the mortgagee, was ever in the actual possession of the twenty-five acres of land claimed in this suit. The question of actual possession by Joseph Ellison was not submitted to the jury, nor is the fact found by the case, upon the concession of the parties. That fact was controverted, but not determined.

Two questions properly arise upon the case.

1. Can the demandant, who is the mortgager of the premises sought to be recovered, maintain the action while the mortgage remains in force, against even a stranger to the title in possession?

2. Is the tenant a stranger to the mortgage title, or is he assignee thereof?

Lord Mansfield, in the case of *The King* vs. *St. Michæls*, *Doug.* 630, says, "a mortgagee, notwithstanding the form, has but a chattel, and the mortgage is only a security," and "that it is an affront to common sense to say, the mortgager is not the real owner." And the doctrine that a mortgager in possession is the real owner, was asserted and maintained in the case of *The King* vs. *Inhab. of Edington*, 1 *East* 288. So also in *Martin* vs. *Mowlin*, 2 *Burr.* 969; and *Eaton* vs. *Jacques*, *Doug.* 55. The same doctrine is maintained in the very lucid and satisfactory opinion of Kent, C. J., in *Jackson* vs. *Willard*, 4 *Johns. R.* 42; and in the opinion of the court in *Runyan* vs. *Mersereau*, 11 *Johns. R.* 534.

We would remark, that, in the cases cited, the rights and interests of the mortgagee were not involved in the opinions.

In *Hitchcock* vs. *Harrington*, 6 *Johns. R.* 290, Kent, C. J., in delivering the opinion of the court, says, "It is now the settled law in this court, and the same principle is recognized in the court for the correction of errors, that the mortgager is to be deemed seized, notwithstanding the mortgage,

as to all persons except the mortgagee and his representatives.

" When his interest is not in question, the mortgager, before foreclosure or entry under the mortgage, is now considered, at law, as the owner of the land."

Parsons, C. J., in *Wellington* vs. *Gale*, 7 *Mass. R.* 138, says, " The mortgager, after his mortgage, still continues the owner of the land, and seized of it against all persons but the mortgagee, or those who claim under him; and he has therefore a right to convey the estate mortgaged, defeasible only by the mortgagee, or some person having his right;" and in that case it was decided, that the purchaser of an equity of redemption sold by the sheriff upon execution, may maintain a real action against any stranger, unless such stranger had in fact disseized the mortgager before the sale of the equity.

And in the opinion in *Southerin* vs. *Mendum*, 5 *N. H. R.* 420, it is asserted that " it is well settled, that as respects all the world, except the mortgagee, the mortgager is to be considered as the owner of the land."

In *Hitchcock* vs. *Harrington*, before cited, the court say, " it is sufficient in this case to say, that as the tenant claims title under the seizin of the husband, and no right arising under the mortgage (of the husband,) and existing in the tenant, is set up, the tenant cannot be permitted to avail himself of a *satisfied* mortgage, in bar of the demandant's right of dower. The same principle ought perhaps equally to estop him from setting up an *existing* mortgage, because we now regard the mortgage estate only for the benefit of the mortgagee and his assigns."

In *Collins* vs. *Torry*, 7 *Johns. R.* 278, the language of the court is thus: " He, (the tenant,) shows no title under the mortgage, and he cannot, therefore, set it up to defeat the widow's dower. A mortgage before foreclosure or entry is not now regarded as a legal title, which a stranger can set up. It can only be used by the mortgagee, and his representatives."

Ellison *v.* Daniels.

It was also decided, in *Jackson* vs. *Pratt,* 10 *Johns. R.* 381, that a stranger, not claiming title under a mortgage, cannot set up the mortgage to defeat the legal title.

Upon the authorities cited, the doctrine would seem to be fully established, that, as against all strangers to the title of the mortgagee, the mortgager is at law the owner, and is seized of the estate mortgaged, and may maintain a real action for the recovery thereof, while the mortgage is still a subsisting mortgage ; and that no stranger to the mortgage will be permitted to set up such outstanding mortgage, without entry or foreclosure of the mortgage by the mortgagee or his assigns, to defeat the seizin and recovery, on the part of the mortgager.

This brings us to the question, and makes it important to enquire, whether the tenant is, upon the facts reported, a mere stranger to the mortgage interest of Joseph Ellison, or was in fact the assignee thereof?

To a proper solution of this question, it is not unimportant to ascertain the nature, character, and extent of the interest of Ellison, the mortgagee, in virtue of his mortgage.

At law, by the mortgage, a conditional estate in fee simple vests in the mortgagee. *Dexter* vs. *Harris,* 2 *Mason* 531.

And a real action may be maintained by a mortgagee, to recover possession of the mortgaged premises. *Estabrook* vs. *Moulton,* 9 *Mass.* 258.

And in *Southerin* vs. *Mendum,* it is said, that a mortgage in fee passes to the mortgagee, as between him and the mortgager, all the estate in the land ; and he may maintain trespass, or a writ of entry, against any one who may disturb his possession, even against the mortgager himself.

And so far as it may be necessary, to enable the mortgagee to prevent waste, and to keep the land from being in any way diminished in value, or to receive the rents and profits, and, in short, to give him the full benefit of the security,

and appropriate remedies for any violation of his rights, he is undoubtedly to be treated as the owner of the land. *Southerin* vs. *Mendum, and auth. there cited. Glass* vs. *Ellison,* 9 *N. H. Rep.* 69. (*Ante 55, Smith* vs. *Moore.*)

In all other respects, and for all other purposes, the interest of the mortgagee is treated as a mere personal chattel.

Kent, C. J., in delivering the judgment in *Jackson* vs. *Willard*, says, that, " until foreclosure, or at least until possession, the mortgage remains in the light of a chose in action. It is but an incident attached to the debt, and in reason and propriety it cannot and ought not to be detached from its principal. The mortgage interest, as distinct from the debt, is not a fit subject of assignment. It has no determinate value. If it should be assigned, the assignee must hold it at the will and disposal of the creditor, who holds the bond. It is difficult to conceive what right can be sold, which does not convey the debt with it. It would be absurd in principle, and oppressive in practice, for the debt and the mortgage to be separated and placed in separate and independent hands."

And the doctrine is asserted and maintained in the elaborate and satisfactory opinion of Ch. J. Richardson, in *Southerin* vs. *Mendum*, that the interest of a mortgagee is not in fact real estate, but a personal chattel; an interest in land inseparable from the debt; an incident to the debt, which cannot be detached from it, and is to be treated as real estate for the purposes already specified.

The right of the mortgagee to have his interest treated as real estate, extends to, and ceases at the point, where it ceases to be necessary to enable him to protect and to avail himself of his just rights, intended to be secured to him by the mortgage.

To enable the mortgagee to sell and convey his estate, is not one of the purposes for which his interest is to be treated as real estate. There is no necessity that it should be so treated for that purpose. That can be equally well effected in the usual way of assigning and transferring the debt se-

Ellison *v.* Daniels.

cured by the mortgage.   The mortgagee is secured, and fortified in all his rights, without the adoption of any such principle, and the plain purposes of a mortgage forbid it.   The object of the mortgage is the security of the debt ; and it is obvious reason, that he only who controls the debt should control the mortgage interest.

The right of Joseph Ellison, then, in the premises in question, for the purpose of sale or transfer, was a mere personal chattel, incident to, inseparable from, and capable of being transferred only in connection with the note by virtue of an assignment thereof.

And the question is, whether that right passed to the tenant, in virtue of the conveyances from Joseph to Abraham Ellison, and from Abraham to the tenant.   Did the note pass by force of those deeds ?

The deeds from Joseph to Abraham Ellison, and from Abraham Ellison to the tenant, were deeds, with covenants of warranty, purporting to convey the lands described in the mortgage deed of the demandant to Joseph Ellison.   The deeds did not in terms import a transfer of the note secured by the mortgage, nor from the deeds alone could it be ascertained that the note described in the mortgage ever had existence.   If in terms, then, there was no assignment, or transfer of the note, the further question arises, whether the deeds did not in legal effect operate an assignment of the note.

*Aymar* vs. *Bill & als.*, 5 *Johns. Ch. Rep.* 570, was a bill to foreclose a mortgage executed to the plaintiff by the defendants, Bill and J. D. Crane, on the 26th of August, 1818, upon a house and lot in Vandewater street in the city of New-York, together with certain other real estate.   The mortgage was executed to secure the payment of a bond given by those two defendants to the plaintiff, on that day, and was duly registered on the following day.   The defendant, Bill, had previously, on the 9th of April, 1817, mortgaged the lot in question, in Vandewater street, to the defendant Crane,

to secure the payment of one thousand dollars; and that mortgage was duly registered on the same day, and was assigned on the 22d of Sept., 1818, to V. Fare, of whom another defendant, F., was administratrix; and she, by her answer, claimed a preference or priority of right to the lot over the plaintiff. The mortgage deed to the plaintiff released, in terms, *all* the "estate, right, interest, claim and demand whatsoever" of the two mortgagers, Bill and Crane, to the lot in Vandewater street. At the date of the mortgage to Aymar, Crane still retained the rights vested in him by the mortgage of Bill.

It was determined by the court, that "the interest of Crane in the lot, at the time of the execution of the mortgage to Aymar, was not an interest in land, capable of being the subject of sale, either absolutely, or by way of mortgage, distinct from the debt it was intended to secure," the mortgage not appearing to have been foreclosed, or possession taken by Crane under it.

This decision fortifies the position, that for the purpose of sale, absolute or conditional, the mortgagee is not to be considered as the owner of the land mortgaged, without either foreclosure of the mortgage or entry under it.

And it is also strongly in point to the effect, that a deed by the mortgagee, which imports a conveyance of the land or other real estate mortgaged, and even though it imports a conveyance of all the "estate, right, interest, claim and demand whatsoever" of the mortgagee in or to the land, will not operate a conveyance of the interest of the mortgagee in the mortgage, or in the debt secured by it.

Ch. J. Richardson, in delivering the judgment of the court in *Bell* vs. *Morse,* 6 *N. H. Rep.* 205, holds this language; "it appears that the tenant is in possession under a title derived from Thomas Morse. But Thomas Morse was only a mortgagee when he conveyed to the tenant. We have no doubt that, under certain circumstances, a conveyance of the land by the mortgagee will pass the debt secured by the

mortgage.  But there are certain cases in which a deed of the land by the mortgagee will pass nothing.  Thus, where a note is secured by a mortgage, if the mortgagee has transferred it he cannot afterwards convey the land.  And we are of opinion, that it is not enough to show a deed from a mortgagee, in order to prove that the land passed, but it must be made to appear that the debt passed to the grantee ; —at least, it must appear that the mortgagee had a right to transfer the debt to the grantee.  As no account is given of the debt secured by the mortgage in this case, we think that the tenant is not entitled to hold the land against the demandant."

This case is directly in point, and to the effect that nothing passed by the deed of Joseph Ellison to Abraham, and consequently nothing to the tenant by Abraham's deed.  In this case, as in *Bell* vs. *Morse,* it did not appear that there had been a transfer of the note by the mortgagee prior to the date of the deed to the grantee of the mortgagee.  In fact, no account was given in either case of any disposition made of the notes by the mortgagees.  The point of the decision in *Bell* vs. *Morse,* is, that a deed alone of the mortgagee, importing a conveyance of the land, does not pass the debt secured by the mortgage.  It would seem, however, fairly to be inferred from the language of the opinion, that if it had appeared that Thomas Morse had had the control of the debt at the date of his deed to the tenant, that the debt would have passed by the deed ; that the control of the debt is one of the circumstances under which it seemed to be the impression of the court, that a deed of the land would also pass the debt.

In the case cited, of *Aymar* vs. *Bill & a.,* however, it did appear that the debt was transferred by Crane *after* the execution of the deed of Bill and Crane to Aymar ; yet it was determined in that case that the interest of Crane, the mortgagee, did not pass by his deed to Aymar, but passed to his subsequent assignee of the debt.  It was said, in that case,

that such a mortgage interest cannot be conveyed as a still subsisting interest, by way of mortgage, " because that would separate the debt and the pledge ; the latter to reside in one person, while the other resided in another."

The judgment in that case goes upon the ground that a mortgage, unaccompanied by a foreclosure or possession under the mortgage by the mortgagee, as the subject of a sale, vests in him only a personal chattel interest, and not an interest in real estate. And it would seem, by implication, to be the opinion of the court, that if the mortgage were accompanied by actual possession, the mortgagee would be so far clothed with the title to the real estate as to enable him to convey it conditionally by a deed of the land. And the authorities we have examined would seem to point to that conclusion.

Whether proof of the fact of the possession of the note by Joseph Ellison, at the date of his deed to Abraham, would have given effect to that deed, so as to pass the debt and the mortgage interest, need not now be determined. It was not, as I have shown, so determined in *Aymar* vs. *Bill & a.* That case holds that, under the facts of it, one of which was that Crane transferred the debt after he had executed the deed to Aymar, the deed purporting a release of *all* the " estate, right, interest, claim and demand whatsoever" of Crane and Bill, did not pass the debt.

Upon the authorities cited, and the facts of this case, we think it entirely clear, that nothing passed by the deed of Joseph to Abraham Ellison, or by the deed of Abraham to the tenant. The tenant, then, was a mere stranger to the mortgage title, and had no interest therein.

The instruction, therefore, to the jury, that the interest of Joseph Ellison did pass to the tenant, was incorrect.

The tenant, being a stranger to the mortgage title of Joseph Ellison could not, as I have shown, be permitted to set it up in defence of the action ; and the mortgager being the owner of the land mortgaged as to all the world except the

mortgagee and his representatives, the demandant was entitled to maintain his action upon the facts reported.

The verdict must, therefore, be set aside and a

*New trial granted.*