CLARK v. CLARK.   { Aug. 13, 1875.

*Devise of mortgaged premises—Construction of wills—Husband and wife— Tenancy by entirety—Bankruptcy.*

G. W. C. mortgaged certain real estate in 1854 to S. H. C. to secure certain notes. S. H. C. died in 1862, testate, never having been in possession of the mortgaged premises. By his will, dated in 1856, he devised to his son, the said G. W. C., and to E. H. C., wife of G. W. C., all his interest in the mortgaged premises, " to have and to hold the same to them during their natural lives;"—remainder, two thirds to C. H. C., and one third to C. E. M., children of G. W. C. and E. H. C.  C. H. C. died, subsequent to the decease of S. H. C. and prior to 1870, under the age of 21 years, and without issue. January 3, 1870, G. W. C. filed his petition in bankruptcy, and was adjudged a bankrupt.  His assignee, under a decree of the bankruptcy court, sold and conveyed to one D. T. the equity of redemption in the mortgaged premises.  E. H. C. and C. E. M. afterwards filed their bill in equity, against G. W. C. and D. T., to foreclose the mortgage.  D. T. demurred to the bill.  *Held*—(1) That, by the will of S. H. C., the debt secured by the mortgage passed to G. W. C. and E. H. C., and their children ; (2) that, at the time of the probate of the will, the equity of redemption was in G. W. C.; that a life estate in the mortgage interest was in G. W. C. and E. H. C. as tenants in common, and not as tenants by entireties; that two thirds of the remainder of the mortgage interest was in C. H. C., and one third in C. E. M.; (3) that, on the death of C. H. C., his interest in two thirds of the remainder of the mortgage interest passed to his father, G. W. C., by inheritance; (4) that, upon the assignee in bankruptcy being made a party to the bill, the plaintiffs would be entitled to a decree of foreclosure ; (5) that the statute of 1860, in relation to married women, destroyed the legal unity of husband and wife, as respects the holding of property and making of contracts by the wife; (6) that the doctrine of *Wentworth* v. *Remick*, 47 N. H. 226, as to tenancies by entirety, has become inoperative, by the passage of the act of 1860 in relation to married women. (7) When the owner of an equity of redemption becomes devisee, as tenant in common of an undivided interest in the mortgage debt, the two estates do not become united, so as to discharge any part of the mortgage debt.

FROM GRAFTON CIRCUIT COURT.

IN EQUITY.  The bill is brought by Eliza H. Clark, of Enfield, in this county, and Clara E. Matthews, of St. Johnsbury, Vt., her daughter,

against George W. Clark, husband and father of the plaintiffs, and Daniel Tilden of Lebanon, in this county. The plaintiffs allege, that on November 11, 1854, the said George W. Clark executed a mortgage of certain real estate, situate in Enfield, conveyed to him by Lorenzo Day, to Samuel H. Clark, his father, to secure him for signing as surety for the said George W. a promissory note for $1,200, of even date with said mortgage, and payable to said Day, or order, April 1, 1855, with interest annually; also, that on June 6, 1856, the said George W. executed another mortgage, to said Samuel H., of said premises; also of a piece of land in Canaan, in said county; also of ten acres, bought of one Godfrey, lying on the opposite side of the road, to secure two promissory notes, one for $912, dated March 12, 1856, and the other for $200, dated May 20, 1856, and each signed and payable by said George W. to said Samuel H., or bearer, on demand, with interest annually; that the said Samuel H. paid the note for $1,200 to said Day; that he died March 10, 1862, testate; that at the time of his decease the full amount of the three notes above described was due to him; that by his last will and testament, dated November 20, 1856, which has been duly proved and allowed, the said George W. was appointed executor; that at the time of his decease the said George W. and Eliza H. Clark had two children, to wit, Charles H. Clark and Clara Clark (one of the plaintiffs); that said Charles H. Clark afterwards died between March 10, 1862, and January 3, 1870, under the age of twenty-one years, and leaving no issue. The first and second items in the will of the said Samuel H. read thus:

"First. I give and devise to my son, George W. Clark, and Eliza Clark, wife of the said George W. Clark, all my interest in the real estate of which I now hold a mortgage from my said son George W. Clark, situated in North Enfield, county and state aforesaid, it being the same real estate that my son George W. Clark bought of Lorenzo Day; also all my interest in the real estate of which I hold a mortgage from my son George W. Clark, situated in Canaan, in said county and state aforesaid, it being the same estate that my son George W. Clark bought of C. M. Dyer and S. R. Godfrey—to have and to hold the same to them during their natural lives, and at their decease said interest to be divided as follows: two thirds to remain to Charles H. Clark, and one third to Clara Clark, children of the said George W. Clark and Eliza Clark.

" Second. I give and bequeath to my daughter Sarah Orinda Hazen, wife of J. W. Hazen, the sum of three hundred dollars; also, all the rest and residue of my personal estate, after payment of my debts and legacies, I do give and bequeath unto my son George W. Clark and my daughter Sarah Orinda Hazen, to be equally divided between them; and I do hereby constitute and appoint my said son George W. Clark sole executor of this last will and testament: in witness whereof," &c.

The plaintiffs further allege, that the said George W. filed his petition in bankruptcy January 3, 1870, upon which he was afterwards duly adjudged a bankrupt, and James G. Ticknor was appointed his assignee;

that by virtue of a license or decree from the district court of the United States for the district of New Hampshire, dated March 21, 1870, authorizing him to sell at public auction the property of said bankrupt, he, on April 18, 1870, at public auction, in consideration of $1,033.13, sold and conveyed to said Daniel Tilden, his heirs and assigns, " all the right, title, and interest " of the said George W. Clark to the aforesaid described real estate, " with the appurtenances thereto belonging, and which may be held by attachment or levy on execution."

The plaintiffs further represent that the notes have not been paid nor the mortgages discharged, but they remain the same as they did at the decease of said Samuel H. Clark, and that in order to protect their interest as given by said will, said mortgages should be foreclosed ; and they pray for a decree of foreclosure of said mortgages, and for a writ of possession of said premises, and for such other relief as may be just.

Tilden demurred to the bill, assigning the following causes :

1. The plaintiffs have not alleged any such title to, interest in, or possession of the lands and tenements named in said bill, as would entitle them to maintain this action against him, or any other action, whether legal or equitable.

2. The plaintiffs do not allege any acts done or claims made by him, which entitle them to the relief prayed for.

3. The bill is multifarious.

4. Charles H. Clark, named in the bill, is not made a party thereto.

5. The bill discloses no equity on the part of the plaintiffs.

6. The bill is in other respects uncertain, informal, and insufficient.

The questions arising upon the demurrer were reserved for the law term of the late supreme judicial court.

*Murray*, for the plaintiffs.

*Carpenter* (with whom was *H. Bingham*), for Tilden.

SMITH, J. It is well settled in this state, by a train of authorities, that a conveyance by a mortgagee, not in possession of the land mortgaged, will not pass the debt secured by the mortgage, and, consequently, will not pass any interest in the land itself attempted to be conveyed. *Furbush* v. *Goodwin*, 25 N. H. 451; *Hobson* v. *Roles*, 20 N. H. 51; *Smith* v. *Smith*, 15 N. H. 64 ; *Dearborn* v. *Taylor*, 18 N. H. 157 ; *Weeks* v. *Eaton*, 15 N. H. 148; *Bell* v. *Morse*, 6 N. H. 205 ; *Ellison* v. *Daniels*, 11 N. H. 274 ; *Aymar* v. *Bill*, 5 Johns. Ch. 570 ; *Jackson* v. *Willard*, 4 Johns. 42.

Samuel H. Clark, by his will, devised to George W. Clark, and Eliza Clark, his wife, all his interest in the premises which George W. Clark had mortgaged to him, to secure two notes which he was owing him, and to secure him for signing a certain note as surety for George W., and which Samuel H. had been compelled to pay, to have and to hold said mortgaged premises to said George W. and Eliza during their nat-

ural lives, remainder to their two children.  There was no express mention made of the mortgage debt, and the testator was not in possession of the mortgaged premises, either at the time of the execution of the will or at the time of his decease.  If the will is to be governed by the same rules of construction as deeds, probably no interest in the mortgaged premises passed to the devisees ; and the question is, What construction shall be given to the language of the will ?

In the construction of wills, the court will be bound by the intention of the testator, to be gathered from the whole will, provided it be consistent with the rules of law.  *Healey* v. *Toppan*, 45 N. H. 264 ; *Malcolm* v. *Malcolm*, 3 Cush. 472. This will was apparently written without the aid of professional advice.  It is to be assumed that the testator intended the devisees should take something by his will ; but if the rule, that a naked conveyance by a mortgagee not in possession passes nothing, is to be applied, then they take nothing, and his manifest intention is defeated ;—for there can be no reasonable doubt, as it seems to me, that he intended, by the use of the language " all my interest in the real estate, of which I now hold a mortgage from my son George W. Clark, situate," &c., to devise to his son and wife the mortgage and debt.  Without the aid of professional advice, few persons are aware that the debt is the principal and the mortgage is the incident, and that a conveyance of the land does not carry the debt with it.

By his will, he disposes of his property in two directions : (1) The mortgage is given to George W. and wife for life, remainder to their children ; and (2) to his daughter Sarah $300, and all the rest and residue of his personal estate to his children, George W. and Sarah. It would seem from this that he regarded the mortgage as real estate, and the rest of his property as personal estate.   His interest in the real estate was to hold it as security for the debt ; and I am of the opinion that the testator intended to devise not only the land but the debt secured thereby, and that the language of the will is capable of that construction. A devise of lands will pass mortgages held by the devisor, unless a contrary intention can be collected from the language of the will. 1 Washb. on Real Prop. 533, and authorities there cited.

If the devise had been to George W. Clark alone, there would be no difficulty in deciding what would be the effect of such conveyance, as it would undoubtedly operate to discharge him from the payment of the debt ; or, if the devise had been to some third person, the devisee could enforce payment of the debt, or foreclose the mortgage ;—but the devise is to George W. Clark, and his wife Eliza, for their lives. It is plain that the conveyance cannot operate to discharge him from the payment, because then the wife Eliza would derive no benefit from the devise ; and it is equally plain that she cannot enforce payment of the whole debt, or foreclose the whole mortgage, as that would deprive him of any benefit from the devise.   We are relieved, however, from inquiring what are the rights of the husband and wife in this respect, by the proceedings in bankruptcy, which were commenced subsequent to the death of the testator, and also subsequent to the death

of Charles H. Clark, one of the remainder-men. It appears by the amended bill, that the equity of redemption from said mortgages was sold by George W. Clark's assignee to Tilden, April 18, 1870. It was not the mortgage debt that was sold, but the mortgaged premises,—that is, " all the right, title, and interest " of George W. Clark in the mortgaged real estate, " with the appurtenances thereto belonging, and which may be held by attachment or levy on execution." The purchaser, Tilden, took by the sale a title subject to the mortgage; and the interest which George W. Clark had in the mortgaged premises, as mortgagee under the will, passed to and is now vested in his assignee. It is obvious that these plaintiffs must be entitled to foreclose the mortgages against Tilden, unless he pays the amount of the mortgage debt, or, at least, that portion of it to which they are entitled according to their several interests.

My conclusion is, that it was the intention of Samuel H. Clark to give to his son George W. and wife, and their children, the property represented by the mortgaged property, and that the debt secured by the mortgages passed. When the will was proved, the equity of redemption was in George W. A life estate in the mortgage interest was in him and his wife, remainder in their children,—two thirds in Charles H. and one third in Clara. The statute of 1860, in relation to married women, practically abolished tenancies by entirety between husband and wife, and the legal unity of husband and wife, as respects the holding of property and making of contracts by the wife, was obliterated. *Clough* v. *Russell,* 55 N. H. 279. Clark and wife were therefore tenants in common, and not tenants by entirety of the mortgage debt. The law, as held in *Wentworth* v. *Remick,* 47 N. H. 226, as to tenancy by entirety, does not apply. When Charles H. Clark, one of the remainder-men, died, his estate passed to his father. George W. Clark then held,—(1) The equity of redemption in the mortgaged premises ; (2) a life estate, as tenant in common with his wife in the mortgage interest; and (3) two thirds of the remainder of the mortgage interest, at the time when the assignee's deed was given.

The assignee ought to be made a party to the bill, and that being done, I see no reason why the demurrer should not be overruled. It cannot be difficult to draw a decree that will protect the rights of all the parties interested, notwithstanding the complications in which the title is involved.

CUSHING, C. J. The first question which presents itself in this case is, whether any interest, and if any interest, what, passed to the plaintiffs by the will of Samuel H. Clark. By the terms of the will the testator devised " all my interest in the real estate of which I now hold a mortgage." These are the operative words, and would appear to have been carefully selected by the testator, who made use of the same phrase twice in regard to different mortgages. What is the meaning of those terms ? Looking at the will in the light of all the circumstances known to us, what is the intention of the testator as derived from a fair con-

struction of that will ? We learn from the case that the first mortgage was given to secure the testator against his liability on certain notes signed by him as surety with his son George. The other mortgage was given to secure the payment of money loaned by the testator to said George ; and it appears from the case, that at the time of the testator's death the whole amount secured by those mortgages was due to him.

The testator did not in terms convey the land, but he did convey all his interest in the mortgaged land. What was this interest at that time ? It was the right to hold that land in fee simple, subject, however, to have the estate defeated by payment to him, for his own use, of the money secured by the mortgage, and the further right to make that title absolute if the amount so secured were not paid to him. If this be not the whole mortgage debt, it would, I think, be pretty difficult to say what more remains. Admitting it to be true, that, if the mortgagee in terms convey the land absolutely, thus indicating his intention to separate the land from the debt, as he has no interest separate from the debt, his deed will pass nothing, still I think that when the mortgagee expressly mentions and alludes to his mortgaged interest, and conveys that, he does not indicate any intention to separate the land from the debt, but, on the contrary, indicates his intention to pass the mortgage, that is to say, the debt and security. I am therefore of the opinion that the language used by the testator manifests his intention to convey as well the mortgage debt as the land by which it is secured.

It appears that the testator died in 1862, after the act in regard to the estates of married women took effect, whereby married women, so far as their property not derived from their husbands was concerned, became practically endowed with the rights and subject to the liabilities of unmarried women. That mysterious joint tenancy in which the subtle genius of the English real law so much delighted itself, where the tenants took not *per me et per tout* but by entireties, could no longer arise. The existence of a married woman, so far as her property is concerned, is no longer by our law merged in that of her husband, but she has become a separate being, endowed, so far as her separate estate is concerned, with the powers and subjected to the liabilities of unmarried women.

By Gen. Stats., ch. 121, sec. 14, this devise must be construed to create a tenancy in common, unless words are used clearly expressing an intention to create a joint tenancy. As this cannot be said of the words which are used in this devise, it follows that the estate created by this devise is a tenancy in common,—one undivided half to George W. Clark during his life, and one undivided half to Eliza H. Clark during her life, with the remainder as to two thirds to the grandson Charles, and as to one third to the granddaughter Clara. The grandson Charles having deceased after the death of Samuel and before the bankruptcy of George, his portion was at once inherited by his father, so that George W. Clark at the time of his bankruptcy was the

owner in fee of two thirds of one half of the mortgage, and also of the remainder of two thirds of one half after the death of Eliza.

The first question which arises in this part of the case is in regard to the effect produced by the inheritance, such as it was, by George W. Clark of his share of the mortgage. How does the doctrine of merger operate? Can there be a merger of the estate by mortgage in a part of the land in the equity of redemption of the whole?

It appears that, in 1870, the defendant Tilden purchased of the assignee of George W. Clark all his interest in the land " which may be held by attachment or levy on execution." What was that interest? I see no way by which, consistently with the rights of all the parties, George W. Clark's interest as mortgagee could be considered as merged in or united with his interest as mortgagor. Where land is mortgaged for security, as this was, the whole land is held as security for the whole debt. The fact that G. W. C. had become owner of an interest in the mortgage debt would by no means prevent the whole estate being held as security for that part of the mortgage debt in which his wife was interested. He could not be absolute owner of a part discharged from the mortgage, and mortgagor holding the other part of the estate subject to his wife's interest in the mortgage debt. The only mode I can see of preserving the rights of all the parties, is by keeping the mortgage and the equity separate, and considering G. W. C. as interested with his wife and others as mortgagee, and separately owning the equity of redemption. *Sahler* v. *Signer,* 44 Barb. 606.

Under such circumstances what interest would the assignee's deed convey? This is a deed, and not a will. It says nothing about the mortgage. It conveys only the interest which may be held by attachment or levy on execution. There is nothing to manifest an intention to convey the mortgage, or any interest under it. According to all the authorities, which are fully cited by my brother SMITH, it could convey no interest by virtue of the mortgage, and must, therefore, convey the equity of redemption, and nothing more ; and it appears to me that this is all the right which he acquires. It is difficult to see why the assignee in bankruptcy did not take all the bankrupt's interest in the mortgage debt, and why he does not now hold it, having, according to my view of the case, never sold or parted with it.

If the assignee does not need this to administer in payment of debts, or for any other purpose, it would, of course, belong to the defendant (George W. Clark), and if the defendant purchaser under the assignee's deed should redeem, George W. Clark would of course be entitled to his share, as it might turn out to be under the will.

I do not see how this matter can be determined without making the assignee a party to this suit. I see no reason why the amendments which are proposed should not be made on such terms as may be deemed equitable.

I think, on the assignee being made a party, a proper decree of foreclosure should be made.

LADD, J. A chronological statement of the facts to be gathered from

the bill and amendments appears to be as follows : November 11, 1854, George W. Clark executed to his father, Samuel H. Clark, a mortgage of certain land in Enfield, to secure him for his liability on a $1,200 note to Lorenzo Day, the whole of which said Samuel H. subsequently paid for the benefit of George W.   June 6, 1856, George W. Clark executed another mortgage to his father of land in Canaan, to secure the payment of two notes from him to his father, set out in the bill. November 20, 1856, Samuel H. Clark made his last will, containing the following item : " I give and devise to my son, George W. Clark, and Eliza Clark, wife of the said George W. Clark, all my interest in the real estate of which I now hold a mortgage from my said son George W. Clark, situated in North Enfield, county and state aforesaid, it being the same real estate that my son George W. Clark bought of Lorenzo Day ; also all my interest in the real estate of which I hold a mortgage from my son George W. Clark, situated in Canaan, in said county and state aforesaid, it being the same estate that my son George W. Clark bought of C. M. Dyer and S. R. Godfrey, to have and to hold the same to them during their natural lives; and, at their decease, said interest to be divided as follows : " Two thirds to remain to Charles H. Clark, and one third to Clara Clark, children of the said George W. Clark and Eliza Clark." The lands mentioned in the will are the same covered by the mortgages, and the testator had no interest in them except by virtue of the mortgages.

Samuel H. Clark died March 10, 1862, and his will was duly proved and allowed.    Afterwards, Charles H. Clark, the remainder-man as to two thirds of whatever estate passed to his father and mother by the will, died.    January 3, 1870, George W. Clark was adjudged a bankrupt, James G. Ticknor appointed assignee, and an assignee's deed, in some form, executed to Daniel Tilden, now made a party defendant to this bill.

The plaintiffs are Eliza H. Clark, wife of the defendant, George W., and their daughter, Clara E. Matthews, who has the remainder as to one third of whatever passed to her father and mother by the will.

The prayer, as to George W. Clark, is for a foreclosure of the mortgages, and, as to Tilden, that he be restrained by injunction from proceedings at law to assert his title under the assignee's deed.

Let us now see, if we can, what was the state of the title at the date of George W. Clark's bankruptcy.    In the first place, I think it does not fairly admit of doubt that it was the intention of Samuel H. Clark, as expressed in his will, to give to his children and grandchildren, in the manner specified, the property represented in his mind by the notes and mortgage against his son.    He called it an interest in real estate.    As against the mortgagor, it was an interest in real estate. The gift on its face is not, strictly, a mere naked assignment of the mortgage without the debt.    It must be assumed that he meant to give something.    *All his interest* in the real estate of which he held the mortgages could not pass by a naked assignment of the mortgages.    To carry that interest, the debt must, of necessity, pass ; and I am of

opinion that such is the only reasonable construction to be put upon the will. How, then, did the title stand upon the probate of this will?

The equity of redemption was in George W. Clark. He and his wife were seized of life estates in the same premises; remainder, as to the mortgage interest, in their children, Charles H. and Clara,—two thirds in Charles and one third in Clara.

What was the character of the seizin of George W. and his wife, as to their life estate in the mortgage interest? I think, under the statute of 1862, it was that of tenants in common. I do not think it is necessary to review our decisions upon that statute, which, as it seems to me, leaves no other conclusion possible. The whole tenor of those decisions is to show that the marital rights of the husband in the estate, real or personal, of his wife, are practically annihilated, except when preserved by special provisions of the law, and the common law idea of the legal unity of husband and wife is abolished. *Clough* v. *Russell*, 55 N. H. 279, and cases cited.

I think the husband and wife were not invested or seized of their life estate in this mortgage interest by virtue of the will by entireties, but as tenants in common, the same as though the marriage relation had not subsisted between them.

The next event was the death of the remainder-man, Charles H. Clark. What, then, became the state of the title? Whether this remainder, this interest in the estate of the mortgagee, be regarded as real or personal estate, it passed by the statute of distribution to the father, George W. Clark. Gen. Stats., ch. 184, secs. 1, 6.

George W. Clark then had (1) the equity of redemption in the whole; (2) a life estate in an undivided moiety of the interest of the mortgagee in the whole, as tenant in common with his wife; (3) the remainder as to two thirds of the mortgage interest. There was outstanding (1) a life interest in one half the mortgage in his wife, Eliza H. Clark, and (2) a remainder as to one third the mortgage in his daughter, Clara E. Matthews.

This was the state of things at the date of the assignee's deed. The question is, What did that deed convey? The defendant Tilden contends that it passed all that George W. Clark took under his father's will, and all that he took by inheritance from his son Charles H. Clark, as well as his equity of redemption. Whether that is so, manifestly depends upon whether the equity merged those fragments of the interest of mortagee when the two estates met in him. It seems to me no such merger could have taken place. The owner of any part of a mortgage has the whole premises for his security. His mortgage cannot be extinguished as to any part or interest, whether divided or undivided, in the land conveyed, without his assent. In order that the equity of redemption may drown the mortgage,—the whole mortgage interest, that is,—the whole legal estate must meet the equity in the same person. It follows that at the time of the bankruptcy George W. Clark had two distinct interests in the land, those of mortgagor and mortgagee, which were kept from blending by the fact that part of the mortgage

interest was at the same time outstanding in other persons. One of those interests, the equity of redemption, passed by the assignee's deed, while the other, that of mortgagee, under our law, would not pass by that deed. The mortgage interest, therefore, which George W. Clark took by the will of his father and by inheritance from his son, still remains in his assignee in bankruptcy. For this reason I think the assignee ought to be made a party to this bill. Clearly, a decree ought not to be made behind his back, because, if Tilden should redeem, George W. Clark's interest in the redemption money will belong to his creditors, and if Tilden should not redeem, the assignee still has obvious rights to be protected. The mere suggestion that all George W. Clark's right and interest in the premises have passed to the assignee is enough to show that the assignee ought to be a party. When all persons interested are before the court, there can be no difficulty in making a decree that will secure the rights of all and do no injustice to the creditors of George W. Clark.

I think the plaintiffs should have leave to amend their bill by making the assignee a party upon such terms as the circuit court may order, and that then the demurrer should be overruled.

*Demurrer overruled.*